```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  UNITED STATES OF AMERICA,
                                                MEMORANDUM & ORDER
                                                 21-CR-417-6 (EK)
                -against-

  WEI ZHENG,

                         Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Defendant Wei Zheng entered a plea of guilty before Magistrate Judge Marcia Henry on November 6, 2023.  This Court accepted that plea two months later.  Having vacillated on the question through a series of conferences and substantial correspondence, Zheng now moves to withdraw his plea.

Zheng's motion does not establish the involuntariness of the plea or adequately allege his legal innocence.  Because of this, and because of the drawn-out history of this case and the prejudice that withdrawal would cause, Zheng's motion is denied.

## I.  Background

Zheng was indicted along with six co-defendants in August 2021.  Indictment, ECF No. 1.  In November 2023, he entered a plea of guilty to Count One of the Indictment, charging him with conspiracy to traffic in counterfeit goods.

Min. Entry, ECF No. 112.  Zheng was represented by counsel at the hearing, as he has been throughout this case (by different lawyers, as noted below).  Zheng allocuted as follows:

> From October 2019 to July 2021, me and other people conspired to sell counterfeit product in Eastern District of New York. I and other joined an agreement to operating [sic] a company named K & J New York Fortune Trading Company.  We have a warehouse in – we have warehouse in Brooklyn, New York.  We utilized the company and warehouse traffic and sell counterfeit product with counterfeit trademark . . . Including Burberry, Gucci and Nike, total valued over 150,000 U.S. dollars.

Tr. 33:16 – 34:11, ECF No. 121.  He also affirmed that he understood the plea agreement, *id.* at 19:19-25, and that he was pleading guilty "[v]oluntarily," *id.* at 32:3-5.  The following day, Zheng filed a letter — *pro se* — addressed to Judge Henry.  Letter, ECF No. 113.  The letter asked her "not to accept" the guilty plea and requested new court-appointed counsel.  *Id.*  Zheng wrote that he believed there to be factual inaccuracies in the plea agreement: he "did not manufacture any counterfeit [items]," he only sold them, and "[he didn't] have [a] warehouse on NJ."  *Id.* at 1.  Zheng further asserted that his counsel, Edgar Fankbonner, pressured him into pleading guilty, saying that "this is the best offer agreement, they cannot give [him] any better," *id.*, that his co-defendants were accepting their plea agreements, *id.*, and that if he did not go through with the plea hearing, "the Judge gonna be mad!"  *Id.* at 2.

2

Shortly thereafter, the Court held a status conference at which Zheng repeated his request for new counsel. *See* Tr. 7:19-8:6, ECF No. 120. On November 28, 2023, the Court relieved Mr. Fankbonner and appointed David Stern to represent Zheng. Min. Entry, Nov. 28, 2023. The Court also "tentatively set" a new trial date for September 2024, in the event that Zheng persisted (and succeeded) in a motion to withdraw his guilty plea. Tr. 8:7-12, ECF No. 122.

Days later, however, Zheng's new counsel filed a letter notifying the Court that "after consulting with newly-appointed counsel," Zheng had "made the decision to withdraw his motion to withdraw his guilty plea." Letter, ECF No. 124. After a review of the record and the plea transcript, this Court accepted Zheng's guilty plea on January 12, 2024. Order, ECF No. 134.

The following month, Zheng's new attorney requested another substitution of counsel — this time due to "a breakdown in communication and lack of trust within the attorney-client relationship." Letter, ECF No. 152. A few days later, Zheng wrote the Court again, expressing that he "never signed any agreement with anyone" to sell counterfeit goods, and did not manufacture such goods, despite what he said in his allocution and plea agreement. Letter, ECF No. 154. He wrote further that he did not appreciate, when he signed the plea agreement, that

3

the crime was a felony. *Id.* at 1. He said he pleaded guilty because "[u]nder the pressure of the moment," he "merely followed [his] attorney's instructions." *Id.*

In April 2024, this Court held another conference. Min. Entry, April 16, 2024. There, Mr. Stern represented that Zheng was not seeking to withdraw his plea — only to "modify" his allocution to more accurately describe his business dealings. Tr. 4:23-25, 7:1-12, ECF No. 186. Mr. Stern explained that Zheng maintained "there was no factory involved, there was nothing having to do with other districts, that [Zheng] does not deny his responsibility, but doesn't believe the allocution accurately reflected what his responsibility was." *Id.* at 7:8-12. The Court invited the defense to submit a letter laying out the basis for another change of counsel. *Id.* tr. 7:3-8.[1]

Instead of the suggested letter, Mr. Stern submitted a letter withdrawing the request for appointment of new counsel. Letter, ECF No. 190. The letter stated:

> I met with Mr. Zheng, along with the Mandarin interpreter, for approximately 1.5 hours to discuss the matter. At the end of that meeting Mr. Zheng informed me that he wished me to continue as his attorney and to proceed to sentencing as expeditiously as possible. The following day I again conferred with

---

[1] A portion of this conference was held *ex parte*, and that section of the transcript was filed under seal. Because the referenced sections do not reveal attorney-client privileged material that is not reflected elsewhere on the record, these statements are ordered unsealed for purposes of this order.

4

>Mr. Zheng to be sure that he had not changed his mind, and he confirmed his decision of the previous day.

*Id.*

Nevertheless, Zheng filed another *pro se* letter several days later requesting a jury trial. Letter, ECF No. 192. Finally, after the Court directed Zheng and his counsel to confer on the matter, Zheng's counsel submitted the instant motion, seeking to withdraw the guilty plea. Mot. to Withdraw Plea of Guilty, ECF No. 197.

## II. Discussion

Zheng asserts that his plea was involuntary because he was "overwhelmed by his attorney's advice to sign a plea agreement" and "succumbed to fear that the Judge would be angry" if he did not. Mem. in Supp. of Mot. to Withdraw ("Def. Mot.") at 1, ECF 200.

A defendant may withdraw a guilty plea that has been accepted only if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). As the text indicates, the defendant "bears the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d

5

Cir. 1992).[2] The Second Circuit has counseled that "[t]he standard for withdrawing a plea is stringent." *United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018). This is because "society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997). As explained below, the relevant factors weigh against allowing withdrawal here.

### A. Voluntariness

Zheng argues, first, that his plea was not entered voluntarily. He "had insufficient time to consider" it. Def. Mem. at 1. In his declaration, Zheng writes that his former counsel, Mr. Fankbonner "said that [Zheng] had already signed the plea and that the judge would be angry if [he] did not come to court." Decl. of Wei Zheng ¶ 2, ECF No. 199. These allegations are insufficient to establish that the plea was involuntary.

When a defendant seeks to withdraw a guilty plea on this basis, the "defendant must raise a significant question about the voluntariness of the original plea," *United States v.*

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

6

*Torres*, 129 F.3d 710, 715 (2d Cir. 1997), to warrant withdrawal or "to justify an evidentiary hearing" on the matter. *Gonzalez*, 970 F.2d at 1100. A defendant's "change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States v. Grimes*, 225 F.3d 254, 259 (2d Cir. 2000).

A plea is voluntary when "it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988); *see also Machibroda v. United States*, 368 U.S. 487, 493 (1962) (plea is involuntary when induced by "promises or threats which deprive it of the character of a voluntary act"). A guilty plea "must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755 (1970).

The Second Circuit has written that not "all inducements for a defendant to plead guilty render either a plea or the consequent waiver of the right to trial by jury

7

involuntary." *McMahon v. Hodges*, 382 F.3d 284, 290 (2d Cir. 2004).  For example, a defendant's assertion that "he feared making the judge mad" has been held insufficient. *United States v. Stephenson*, No. 17-CR-199-A, 2020 WL 7398760, at *2 (W.D.N.Y. Dec. 17, 2020), *aff'd*, No. 21-74-CR, 2023 WL 3402310 (2d Cir. May 12, 2023); *see also Kue v. Birkett*, No. 2:10-CV-11925, 2013 WL 2155527, at *5 (E.D. Mich. May 17, 2013) (defendant's "bare claim that he was coerced into pleading guilty" based on his attorney's warning "that he would make the judge mad by taking the case to trial, that all the evidence was against him, and that he would be sentenced" to a long term of incarceration were insufficient to render a plea involuntary).[3]

Zheng's sworn statements at the plea hearing, moreover, contradict his current claims of involuntariness. Motions to withdraw guilty pleas are properly denied when the "record is insufficient to overcome the strong presumption of accuracy that we must afford [the defendant's] own sworn statement that his plea was voluntary." *Albarran*, 943 F.3d at 124; *see also Gonzalez*, 970 F.2d at 1100-01 (affirming denial where defendant "stated unequivocally that he had read the

---

[3] The Second Circuit has noted that it is "commonplace that a defendant will feel 'coerced' in the lay sense of the word by an attorney's recommendation to plead guilty rather than proceed to trial.  Such recommendations often come with predictions of almost inevitable conviction at trial followed by a long jail sentence.  A feeling of duress is hardly an unusual outcome of such deliberations." *United States v. Juncal*, 245 F.3d 166, 174 (2d Cir. 2001) (affirming denial of motion to withdraw guilty plea but vacating the sentence on other grounds).

8

cooperation agreement and was familiar with its content, and that no other offers had been made to him to induce his plea" and his arguments "merely contradicted [his] earlier statements made under oath at his plea allocution"); *Maher*, 108 F.3d at 1529-30 (rejecting argument that defendant pleaded guilty due to his attorney's coercion and misrepresentations, as contradicted by statements made at defendant's plea allocution).

At the plea hearing, Zheng confirmed that he did not have any problems communicating with his attorney, that he had had enough time to discuss the case with him, and that he was satisfied with his attorney's assistance in the case.  Tr. 10:7-9, 13:6-11, ECF 121.  He also confirmed that he understood the crime he was charged with and understood what the government would have to prove to convict him of conspiracy to traffic in counterfeit goods.  *Id.* at 13:24-14:22.  Zheng then affirmed his understanding of his right not to plead guilty and his willingness to give up his right to trial and all other rights concomitant with a plea of not guilty.  *Id.* at 16:1-4, 18:17-20.  When asked if he was "pleading guilty voluntarily and of [his] own free will," Zheng responded "Voluntarily."  When asked "[h]as anyone threatened or forced you to plead guilty?" and "has anyone promised you anything to make you plead guilty" beyond the plea agreement itself, Zheng replied "No" each time.  *Id.* at 32:3-15.  Finally, Zheng confirmed that he understood and

9

had signed the plea agreement, which stated he had entered the agreement "knowingly and voluntarily." *Id.* at 19:19-25. Thus, as in other cases in which the Second Circuit has upheld denials of withdrawal motions, Zheng's:

> sworn statements during his plea hearing directly contradict an involuntary guilty plea for he stated under oath, *inter alia,* that (1) he was satisfied with his counsel's representation of him; (2) the plea was of his own free will; (3) he was guilty and stated that he understood that the court would not accept his plea if he claimed to be innocent; and (4) he had no questions regarding the sentencing proceeding after the plea was entered. . . .  [T]hese statements undermine [the defendant's] claim that his guilty plea was involuntary.

*United States v. Diaz*, 176 F.3d 52, 114 (2d Cir. 1999).

Finally, various representations made on the record following Zheng's plea hearing undercut his claim that his plea was not made voluntarily. First, at a November 2023 status conference, Zheng's first counsel described the plea agreement as one "which we reviewed meticulously, which [Zheng] understood in its entirety, which was explained to him over and over again." Tr. 5:14-16, ECF 120. Zheng also twice withdrew requests to withdraw his guilty plea, both while he was represented by his second counsel — not the attorney who represented, and allegedly pressured, him during the plea negotiation and hearing. Letters, ECF Nos. 124, 190. In the second letter, Zheng's attorney explained that he had discussed the matter with Zheng for "1.5 hours" and then called Zheng the

10

following day to re-confirm, and that Zheng wished to proceed to sentencing. Letter, ECF 190. Zheng's statements in his plea allocution, along with various representations that followed, therefore support a finding that Zheng's plea was made voluntarily.

## B. Time Between the Plea and Motion

In addition to examining whether a plea was made voluntarily, the Second Circuit has laid out certain factors for a court to consider in this context:

> To determine whether the defendant has proffered a "fair and just reason" to justify withdrawal, a district court should consider, *inter alia*: (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea.

*United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008).

Zheng emphasizes the first factor — the timeliness of his motion — as favoring withdrawal. Def. Mot. at 8-10. He argues that his letter to Judge Henry the day after the plea hearing constitutes an "almost immediate[]" indication that he had changed his mind. *Id.* Zheng then cites a D.C. Circuit case for the proposition that withdrawal is favored "where the motion comes only a day or so after the plea was entered." *Id.* at 9 (quoting *United States v. Barker*, 514 F.2d 208, 222 (D.C. Cir. 1975)). This argument overlooks the fact that after multiple

11

status conferences, during which a new trial date was set and new counsel was appointed, and after consultation with his new counsel, Zheng withdrew this request to withdraw his guilty plea.  Letter, ECF No. 124.  Zheng then submitted another *pro se* letter about withdrawing his plea, and once again withdrew this request, *see* Letters, ECF Nos. 154, 190, before ultimately making this motion more than six months after pleading guilty.

As a number of courts have held, this type of vacillation cuts against permitting withdrawal.  For example, another district court denied withdrawal where, "although [the defendant] had 'misgivings' both before and after the plea, and made gestures towards withdrawing the plea within days of entering it, he repeatedly flip-flopped on the matter, and did not finally determine to seek to withdraw the plea until the eve of the adjourned sentencing date."  *United States v. Aly*, No. 06-CR-309, 2007 WL 186793, at *12 (S.D.N.Y. Jan. 23, 2007), *aff'd,* 341 F. App'x 662 (2d Cir. 2009).[4]

Zheng's equivocation also essentially re-starts the clock on his motion, as "a decision to withdraw a motion to withdraw a guilty plea is in effect a reaffirmation of the

---

[4] *See also United States v. McIntosh*, 29 F.4th 648, 656 (10th Cir. 2022) (finding that the defendant's "flip-flopping here reflected [the] angst" inherent in pleading guilty, "not a lack of understanding of the plea's consequences"); *United States v. May*, No. 1:17-CR-381-1, 2018 WL 5268206, at *5 (M.D.N.C. Oct. 23, 2018) (denying motion to withdraw in part because the defendant's "history of repeatedly changing his mind seems likely to recur, causing further delays and wasting additional court resources").

12

original plea." *Doe v. United States*, 51 F.3d 693, 700 (7th Cir. 1995). When this back-and-forth is included in the time frame, Zheng's motion cannot be considered immediate. Delays shorter than the six months between Zheng's plea and the instant motion have been held substantial enough to weigh against withdrawal. *See United States v. Albarran*, 943 F.3d 106, 123 (2d Cir. 2019) ("The four-month lapse between his guilty plea and his motion to withdraw the plea further supports the District Court's exercise of discretion in denying [the defendant's] request."); *Doe*, 537 F.3d at 213 ("[T]he fact that the defendant waited five months to file his motion strongly supports the district court's finding that his plea was entered voluntarily."); *United States v. Overton*, 24 F.4th 870 (2d Cir. 2022) (five-month delay considered substantial in affirming denial of motion to withdraw guilty plea).

Thus, Zheng's indecision, and the multiple-month delay before formally moving to withdraw, support denial of the instant motion.

### C. Claim of Legal Innocence

Zheng now asserts that he is innocent of the charged crime, as he did not conspire with anyone in his sale of counterfeit goods. Def. Mot. 1. Of course, courts have no interest in adjudicating innocent people guilty. However, a "mere assertion of innocence is per se insufficient to support a

13

motion to withdraw a guilty plea." *United States v. Fernandez*, 734 F. Supp. 599, 604 (S.D.N.Y. 1990), *aff'd*, 932 F.2d 956 (2d Cir. 1991).  Instead, to state a claim of "legal innocence" in the context of a plea withdrawal, "the defendant must make a *factual argument* that supports a legally cognizable defense." *United States v. Hamilton*, 510 F.3d 1209, 1214-15 (10th Cir. 2007);[5] *see also United States v. Thomas*, 651 F. Supp. 3d 685, 693 (S.D.N.Y. 2023) ("The legal innocence factor requires the Court be convinced that there are legally cognizable defenses to the crime charged to exculpate the defendant.").[6]

Zheng has not adequately alleged, let alone evidenced, his legal innocence.  Claims of innocence are afforded "little credit" when the defendant "present[s] no evidence supporting his claim of legal innocence" and merely "recounts that he

---

[5] Courts in other contexts have distinguished between "legal innocence" and "actual innocence*." Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992) ("We have emphasized that the miscarriage of justice exception is concerned with actual as compared to legal innocence.").  In the habeas context, for example, "a claim of strict legal innocence occurs when a defendant claims that a law or statute is unconstitutional in its application to all persons," whereas "a claim of actual innocence arises when a defendant claims that a law was applied unconstitutionally to him." *Borrego v. United States*, 975 F. Supp. 520, 524 n.3 (S.D.N.Y. 1997).  Although this distinction is not explicitly made in the caselaw dealing with plea withdrawals, it is worth noting that Zheng makes no argument about the validity of his statute of conviction; he challenges only the factual accuracy of his allocution.

[6] The defendant's "burden is to credibly assert his legal innocence: that is, to present evidence that (1) has the quality or power of inspiring belief, and (2) tends to defeat the elements in the government's *prima facie* case or to make out a successful affirmative defense." *United States v. Thompson-Riviere*, 561 F.3d 345, 353 (4th Cir. 2009); *see also Barker*, 514 F.2d at 220-21 ("Whether the movant has asserted his legal innocence is an important factor to be weighed. . . .  If the movant's factual contentions, when accepted as true, make out no legally cognizable defense to the charges, he has not effectively denied his culpability, and his withdrawal motion need not be granted.").

14

expressed his innocence throughout his arrest and court proceedings, except when he signed the plea agreement . . . and when he changed his plea to guilty." *United States v. Lam Peralta*, 792 F. App'x 68, 70 (2d Cir. 2019); *see also Gonzalez*, 647 F.3d at 60 (affirming denial of withdrawal motion when defendant "asserted in his affidavit that he wished to prove his 'legal innocence' . . . and that he had 'never wavered in his desire to prove his legal innocence' . . . [but] did not refer to anything that would corroborate a claim of innocence").

In his declaration in support of his motion, Zheng states that he "plead[ed] guilty because [he] had sold counterfeit goods" but that he "had not conspired with anyone to do so." Decl. of Wei Zheng ¶ 3, ECF No. 199. In his allocution, however, Zheng stated that "me and other people conspired to sell counterfeit product in Eastern District of New York. I and other joined an agreement to operating a company . . . we have warehouse in Brooklyn, New York. We utilized the company and warehouse traffic and sell counterfeit product with counterfeit trademark." Tr. 33:16 – 34:11, ECF No. 121. "A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999). Because of this, a

15

"defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw his guilty plea."  *Torres*, 129 F.3d at 715.

There is additional evidence that contradicts Zheng's claim of innocence.  For example, in a letter from February 2024, Zheng writes that his "only transactions were purchasing goods from Mr. Zhou" — a co-defendant in this case — and that he "bought and sold counterfeit products from Mr. Zhou."  Letter at 1, ECF No. 154.[7]  In the same letter, as noted above, Zheng writes that he "never signed any agreement with anyone," *id.*, suggesting that his belief in his innocence may be predicated on the misapprehension that a conspiracy charge requires a written agreement.  Zheng has not adequately alleged legal innocence.

D.  **Prejudice to the Government**

The final factor asks whether withdrawal of the guilty plea will result in prejudice to the Government.  "[T]he Government is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal."  *Gonzalez*, 970 F.2d at 1100.  Nevertheless, this factor, too, weighs against withdrawal of the plea.  Zheng admits that he

---

[7] Although in this letter Zheng expressly disclaims association with an individual or entity named "Yongsheng," he does not address the allegations that he was an associate of, and ran his business with, co-defendant Saiyin Hou.  Indictment ¶¶ 12, 18, ECF No. 1.

16

"cannot know for certain if the government will be prejudiced" but asserts "upon information and belief that they will not." Def. Mem. at 8. The government, however, points out that in the six months between Zheng's guilty plea and this motion, they have — in reliance on the plea — ceased trial preparations. Gov't Opp'n to Mot. to Withdraw Plea at 12-13, ECF No. 207. In this time, the memories of potential witnesses have likely faded, and Zheng's co-defendants have been sentenced. *Id.* Withdrawal of Zheng's plea would, therefore, result in prejudice to the government.

### III. Conclusion

For the foregoing reasons, Zheng's motion to withdraw his guilty plea is denied.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   October 30, 2024
         Brooklyn, New York

17